## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

CAROLYN BEECH,                          )
on behalf of herself and the            )
class members described below,          )
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )
                                        )
THE LITIGATION PRACTICE                 )
GROUP, PC,                              )
                                        )
                    Defendant.          )

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

**MAR 1 7 2022**

ARTHUR JOHNSTON
BY_____ DEPUTY

1.22cv57H50-RHWR

## COMPLAINT – CLASS ACTION

### NATURE OF THE ACTION

1.      Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 et seq.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction under 15 U.S.C §1679 and 28 U.S.C. §§1331 and 1337. On information and belief, the Court also has jurisdiction under 28 U.S.C. §1332(d), the amount in controversy exceeding $5 million on a classwide basis, there being more than 100 class members, and the parties being of diverse citizenship.

3.      This Court has personal jurisdiction over Defendant because Defendant solicited business from residents of Mississippi and collected money from residents of Mississippi under contracts that are void pursuant to the CROA.

4.      Venue in this District is proper because a material portion of the events at issue occurred here.

5.      Article III is satisfied because Plaintiff and each class member is entitled to void a contract providing for the payment of money to Defendant, or recover money back from Defendant, or both.

1

## PARTIES

6.     Plaintiff Carolyn Beech is a resident and domiciliary of Carriere, Pearl River County, Mississippi.

7.     Defendant The Litigation Practice Group PC ("LPG") is a California corporation with its principal offices at 17542 East 17th Street, Suite 100, Tustin, CA 92780.  Its registered agent is Daniel S. March at that address.  Daniel S. March is also its sole officer and director.

8.     LPG is a credit repair organization that offers its clients both legal and non-legal services designed to resolve their debt issues and improve their credit history, including working towards actively settling debts for such consumers.

## FACTS

9.     In late 2021, LPG solicited Plaintiff Carolyn Beech for a "debt forgiveness" program.

10.    Under this program:

    a.     LPG would negotiate settlements of Ms. Beech's delinquent debts, amounting to $12,650.44;

    b.     Ms. Beech would pay $296.95 / month for 24 months.

11.    LPG specifically told Plaintiff Carolyn Beech that its program would repair her credit and improve her credit score.

12.    Ms. Beech signed the following documents via her phone:

    a.     Legal services agreement (Exhibit A);

    b.     Electronic payment authorization (Exhibit B);

    c.     Preauthorized checking and ACH authorization form (Exhibit C).

13.    Each of the documents in Exhibits A-C is a standard form regularly used by Defendant LPG.

14.    To induce her to enter into the agreement, LPG provided Ms. Beech with a document entitled "Smarter Path to Debt Relief Services" (Exhibit D).  This document suggested

2

that LPG could provide useful services to a consumer if the consumer answered the following questions in the affirmative:

> a.   "Has your credit score already been negatively impacted?"
>
> b.   "My credit report was damaged and needs to be worked on by a knowledgeable lawyer."

15.   A consumer reading the material would understand from it that LPG could improve one's credit score and repair credit damage.

16.   In addition, the services offered by Defendant LPG, of settling debts for less than the amounts due, would necessarily result in credit repair, in that delinquent debts would be reported as settled, and the consumer's credit utilization (amount of credit used compared to amount of credit available, a key measure of creditworthiness) would be reduced.

17.   Exhibit D is a standard form regularly used by LPG.

18.   Exhibits A-D were the only documents Ms. Beech received from LPG.

19.   After making three payments Ms. Beech ceased doing so after she was served with summonses and complaints on two of the debts that LPG had undertaken to negotiate for her.

## COUNT I -- CREDIT REPAIR ORGANIZATIONS ACT

20.   Plaintiff incorporates paragraphs 1-19.

21.   The CROA was enacted "(1)to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2)to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. §1679(b).

22.   Plaintiff is a "consumer" as defined by 15 U.S.C. §1679a(1).

23.    Defendant LPG is a "credit repair organization" as defined by 15 U.S.C. §1679a(3), in that it is a "person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of – (i) improving a consumer's credit, credit history, or credit

rating, or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)."

### Payment Before Services Fully Performed

24.     15 U.S.C. §1679b(b) provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

25.     Defendant LPG violated §1679b(b) by charging and receiving money for services it agreed to perform before such services were fully performed.

26.     It is the standard policy and practice of Defendant LPG to charge a monthly sum before services are performed.

27.     Defendant LPG's practice of charging a monthly sum before services are performed is inherently in violation of the CROA.

28.     This prohibition was included in the CROA because of repetitive instances in which credit repair organizations obtained payments toward credit repair services, the consumers discontinued such services (often when the creditors with whom debts were to be negotiated filed lawsuits), and the credit repair organizations obtained money in excess of any benefit to the consumer. The practice was considered inherently unfair and deceptive.

### Failure to Make Disclosures

29.     The CROA provides that a credit repair organization must provide consumers with certain written disclosures in its contracts.

30.     These disclosures are intended to provide consumers with information they need to avoid unnecessary use of expensive credit repair organizations.

31.     15 U.S.C. §1679c(a) requires provision of a written statement informing the consumer of their rights under the Fair Credit Reporting Act and the CROA.

32.     15 U.S.C. §1679c(b) provides that "the written statement required under this section

shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

33.     Defendant LPG violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required.

34.     Defendant LPG never provided such disclosures, nor did it provide a separate document containing such disclosures.

35.     On information and belief, it is the standard policy and practice of Defendant LPG to not provide the required disclosures.

### Failure to Provide Cancellation Rights

36.     The CROA, pursuant to 15 U.S.C. §1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'"

37.     Under 15 U.S.C. §1679e, a credit repair organization must provide a consumer a separate notice of a consumer's cancellation right.

38.     The only disclosure of cancellation rights is a statement in the last two sentences of the six sentences on the fourth page of Exhibit A that "You, the client, may cancel this Agreement at any time by submitting three days' written notice of cancellation by mail, email or fax, and shall not be responsible for any payments due after the date of cancellation.  A payment due within three days of the date of written cancellation shall be processed and shall not be refunded."

39.     The statement is not that required by the CROA, and is not bold or conspicuous. There is no separate notice of right to cancel.

40.     It is the standard practice of Defendant LPG to present cancellation rights in the

manner described above.

41.     Defendant LPG violated 15 U.S.C. §§1679d(4) and 1679e through its failure to provide the disclosure required by the CROA both in the contract between the parties and in a separate form.

42.     The CROA requires a notice of cancellation rights because consumers would often contract for expensive and unnecessary credit repair services that they would, upon reflection, decide were expensive and unnecessary, only to find themselves contractually obligated.

43.     The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. §1679f(c).

44.     The contracts of Plaintiff and the members of the class described below are void.

45.     The CROA provides for damages in 15 U.S.C. §1679g:

(a)     Liability established

Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:

    (1)     Actual damages

        The greater of—

            (A)     the amount of any actual damage sustained by such person as a result of such failure; or

            (B)     any amount paid by the person to the credit repair organization.

    (2)     Punitive damages

            (A)     Individual actions

            In the case of any action by an individual, such additional amount as the court may allow.

            (B)     Class actions

            In the case of a class action, the sum of—

6

(i)      the aggregate of the amount which the court may allow for each named plaintiff; and

(ii)     the aggregate of the amount which the court may allow for each other class member, without regard to any minimum individual recovery.

(3)    Attorneys' fees

In the case of any successful action to enforce any liability under paragraph (1) or (2), the costs of the action, together with reasonable attorneys' fees.

(b)    Factors to be considered in awarding punitive damages

In determining the amount of any liability of any credit repair organization under subsection (a)(2), the court shall consider, among other relevant factors—

(1)    the frequency and persistence of noncompliance by the credit repair organization;

(2)    the nature of the noncompliance;

(3)    the extent to which such noncompliance was intentional; and

(4)    in the case of any class action, the number of consumers adversely affected.

## CLASS ALLEGATIONS

46.    Plaintiff brings this claim on behalf of 3 classes, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

47.    Class A consists of all persons who, on or after a date five years prior to the filing of this action, entered into contracts with Defendant LPG, which contracts were not cancelled within three business days, that provide for monthly payments before services are fully performed.

48.    Class B consists of all persons who, on or after a date five years prior to the filing of this action, entered into contracts with Defendant LPG, which contracts were not cancelled within three business days, and who were not provided with the written statement described in 15 U.S.C. §1679c(a).

49.    Class C consists of all persons who, on or after a date five years prior to the filing of this action, entered into contracts with Defendant LPG, which contracts were not cancelled within

7

three business days,  and who were not provided with both (a) a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right" and (b) a separate notice of cancellation form.

50.     The members of the three classes may well be coterminous.

51.     Residents of Georgia are excluded from the classes.

52.     Plaintiff may alter the class definitions to conform to developments in the case and discovery.

53.     On information and belief, there are more than 100 members of each class, and each class is so numerous that joinder of all members is not practicable.

54.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are whether Defendant LPG engages in the practices described and whether such practices violates the CROA..

55.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

56.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer litigation.

57.     A class action is superior for the fair and efficient adjudication of this matter, in that:

a.     Individual actions are not economically feasible.

b.     Members of the class are likely to be unaware of their rights;

c.     Congress intended class actions to be the principal enforcement mechanism under the CROA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class

members and against Defendant LPG for:

        i.        A declaration that the practices complained of herein are unlawful and violate the CROA;

        ii.        Actual damages  as provided under 15 U.S.C. §1679g(a)(l);

        iii.        Punitive damages, as provided under 15 U.S.C. §1679g(a)(2)(A);

        iv.        Litigation expenses, reasonable attorney fees and costs as provided under 15 U.S.C. §1679g(a)(3); and

        v.        Such other or further relief as the Court deems appropriate.

_s/ Jason Graeber_
Jason Graeber

Jason Graeber
250 Beauvoir Road, Suite 4C
Biloxi, MS 39501
(228) 207-7117
jason@jasongraeberlaw.com

admission pro hac vice to be applied for

Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

_s/ Jason Graeber_
Jason Graeber

T:\38577\Pleading\Complaint DAE 3-16-22_Pleading.wpd

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

*s/ Jason Graeber*
Jason Graeber

## DOCUMENT PRESERVATION DEMAND

      Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has  possession, custody, or control of any such materials, Plaintiff demands that defendant request  that such third party also take steps to preserve the materials. This demand shall not narrow the  scope of any independent document preservation duties of the defendant.

*s/ Jason Graeber*
Jason Graeber

T:\38577\Pleading\Complaint DAE 3-16-22_Pleading.wpd

12