**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| Carolyn Beech, on behalf of herself and the class members described below, | ) | Case No.:  1:22-cv-00057-HSO-BWR |
| | ) | |
| | ) | Judge: Halil S. Ozerden |
| Plaintiff, | ) | |
| | ) | Magistrate Judge: Bradley W. Rath |
| vs. | ) | |
| | ) | |
| The Litigation Practice Group, PC, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR REVIEW OF AND OBJECTIONS TO**
**MAGISTRATE JUDGE'S ORDER**

Defendant, The Litigation Practice Group, PC ("LPG"), respectfully objects to the Magistrate Judge's Text Only Order, entered on April 20, 2023, granting Plaintiff's Motion for Leave to File Amended Complaint Adding Parties. LPG therefore submits this Motion for Review of Magistrate Judge's Order pursuant to Fed. R. Civ. P. 72(a), Fed. R. Civ. P. 72 (b)(2), Local Uniform .Civ. R. 72(a)(1), and 28 U.S.C. § 636(b)(1)(A). LPG incorporates, as if fully rewritten herein, its Memorandum opposing Plaintiff's Motion for Leave. [Doc. 44].

For the reasons set forth herein, LPG respectfully requests that the District Court Judge set aside the Magistrate Judge's Order in its entirety, for the reason that the Magistrate Judge's Text Only Order is clearly erroneous and is contrary to law.

## I.      INTRODUCTION

Less than two weeks before the close of class discovery, after moving for class certification, and nearly a year after commencing this action, Plaintiff sought leave to amend her Complaint to add eight (8) additional defendants. One of the lead new-party defendants, the managing shareholder of LPG, was known by Plaintiff at the time she filed her original Complaint. In her Motion for Leave, Plaintiff fails to provide any justification whatsoever for failing to name Daniel

Marsh [sic][1] in her original Complaint, notwithstanding that March signed the Legal Services Agreement (as LPG's Managing Shareholder) attached to her Complaint, and notwithstanding that March was managing the client relationship with Plaintiff from the outset.

With respect to the other new-party defendants, Plaintiff urges in her Motion for Leave that she has uncovered newfound "revelations" as a result of litigation in California. This California litigation, however, was pending for five (5) months before Plaintiff sought leave to amend. In her Motion for Leave, Plaintiff fails to provide any reasoning as to why she waited five months to seek leave to add eight additional defendants.

The Federal Civil Rules and the well-established jurisprudence in the Fifth Circuit do not support leave to amend here, in any fashion. The Magistrate Judge's Text Only Order must be vacated in its entirety, as it is clearly erroneous and is contrary to law.

## II.   **PERTINENT PROCEDURAL HISTORY**

Plaintiff filed her original Complaint on March 17, 2022. [Doc. 1]. After an extension of time to respond, LPG answered Plaintiff's Complaint on May 9, 2022. [Doc. 10]. The Court conducted a Telephonic Case Management Conference on June 22, 2022, during which the Court set a class certification-related discovery deadline of December 1, 2022, and a deadline of January 17, 2023, for moving for class certification. [Docket Entries of June 22, 2022].

On December 2, 2022, in response to Plaintiff's Motion for Extension of Time to Complete Discovery [Doc. 26], the Court extended the deadlines for class discovery and the motion for class certification to February 1, 2023, and April 17, 2023, respectively. [Docket Entry of December 2, 2023].

On January 19, 2023, the Court extended the class discovery deadline to March 3, 2023.

---

[1] Plaintiff incorrectly refers to Daniel March as "Daniel Marsh." *See* Legal Services Agreement, Doc. 42-2, Page 5.

[Doc. 38]. Plaintiff moved for class certification, with respect to claims against LPG, on February 10, 2023. [Doc. 40]. Plaintiff filed her Motion for Leave to File Amended Complaint on February 20, 2023. [Doc. 42]. LPG timely opposed Plaintiff's Motion for Leave on March 6, 2023. [Doc. 44]. Plaintiff filed her Reply Memorandum, albeit untimely, on March 14, 2023. [Doc. 45].

LPG filed its Notice of Bankruptcy Filing on March 21, 2023. [Doc. 46]. On April 11, 2023, the Court denied Plaintiff's Motion for Class Certification due to LPG's bankruptcy, without prejudice to reassert Plaintiff's Motion if the bankruptcy stay is terminated. [Docket Entry of April 11, 2023]. On April 20, 2023, following a Status Conference, the Magistrate Judge issued a Text Only Order, granting Plaintiff's Motion for Leave. [Docket Entry of April 20, 2023].

## III.   PLAINTIFF'S PURPORTED JUSTIFICATION FOR SEEKING LEAVE

In her Motion for Leave, the only reasons offered in support of her request to amend, filed almost a year after the commencement of this action, are as follows:

- "As a result of litigation in California federal and state courts among participants in the operations of [LPG], it has become apparent that…." Plaintiff proceeds to set forth four allegations which Plaintiff suggests support leave to amend.

- "Given the revelations about LPG's money and accounts being distributed to the proposed additional Defendants," [naming the additional defendants] "is necessary to provide redress for Plaintiff and the class members…"

- "The amendments will not cause any prejudice to LPG." Plaintiff, however, fails to explain why, at this late stage, the amendments will not cause prejudice to LPG.

That is all. This is the only justification provided by Plaintiff in her Motion for Leave, filed after nearly a year of litigation and nearing the close of discovery.[2]

---

[2] Only in her rebuttal does Plaintiff backtrack, attempting to justify the significant delay in seeking to amend her original Complaint. For the reasons set forth more fully below, Plaintiff's extreme delay in seeking an amendment is not justifiable under longstanding Fifth Circuit jurisprudence.

It is instructive to note that Plaintiff's allegations against the new-party defendants set forth in her First Amended Complaint ("FAC") largely arise from, and mimic nearly in their entirety, the state court litigation in California that has been pending since September 20, 2022. (*See, e.g.*, Doc. 44-1, "California Complaint," ¶36 *cf*. FAC ¶19) (regarding Tony Diab's alleged use of the "admin@lpglaw.com" email account); Ex. A. ¶19 *cf*. FAC ¶21 (regarding the alleged way in which LPG raised capital from Validation Partners LLC); Ex. A. ¶34 *cf*. FAC ¶19 (regarding the allegation that March acts as a figurehead for LPG); Ex. A ¶41 *cf*. FAC ¶36 (regarding Diab's alleged transfer of $2.8 million to Vulcan Consulting Group LLC).

## IV.   LAW AND ARGUMENT

### A.   Standard of Review for Objections to a Magistrate Judge's Order

Under Fed. R. Civ. P 72(a), "[a] party may serve and file objections to the [magistrate's non dispositive] order within 14 days after being served with a copy."  "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *Id. See also* 28 U.S.C. § 636(b)(1)(A); *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014).

This Court has recently stated that "[t]his standard of review is 'extremely deferential' to the Magistrate Judge's order."  *Hartzog v. Hackett*, No. 2:16-CV-2-KS-MTP, 2016 U.S. Dist. LEXIS 131356, at *1 (S.D. Miss. 2016) The Court further stated "[a] decision is contrary to law when it <u>fails to apply</u> or misapplies relevant statutes, case law or rules of procedure."  *Id*. (emphasis added). Finally, the Court found "[a] finding is clearly erroneous when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id*.

**B.**     <u>The Magistrate Judge's Text Only Order Granting Leave to Amend is Clearly</u>
<u>Erroneous and Contrary to Law</u>

Motions for leave to amend are generally governed by Fed. R. Civ. P 15(a). *Mitsubishi*

*Aircraft Internatl., Inc. v. Brady,* 780 F.2d 1199, 1203 (5th Cir.1986). Under Fed. R. Civ. P 15(a),

"[t]he court should freely give leave when justice so requires."   "While cases have held that the

district court should err on the side of allowing amendment, leave should not be given

automatically." *Id.*

In following the precedent set by the United States Supreme Court, five considerations are

given in determining whether to deny leave to amend a complaint: "undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed undue prejudice to the opposing party by virtue of the allowance of the

amendment, [and] futility of the amendment . . . ." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864

(5th Cir. 2003), *citing Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).

"A litigant's failure to assert a claim as soon as he could have is properly a factor to be considered

in deciding whether to grant leave to amend." *Id.*

In addition to reviewing amendments to the pleadings under Fed. R. Civ. P. 15(a), the Fifth

Circuit Court of Appeals also holds that "Federal Rule of Civil Procedure 16(b) governs

amendment of pleadings after a scheduling order's deadline to amend has expired." *Fahim v.*

*Marriott Hotel Servs.*, 551 F.3d 344, 348 (5th Cir. 2008).

In the context of leave to amend a complaint, the Fifth Circuit in *Fahim* applied Fed. R.

Civ. P 16(b) as follows:

> Fed. R. Civ. P. 16(b) provides that once a scheduling order has been entered, it
> 'may be modified only for good cause and with the judge's consent.'   It requires a
> party 'to show that the deadlines cannot reasonably be met despite the diligence of
> the party needing the extension.'   As to post-deadline amendment, a party 'must
> show good cause for not meeting the deadline before the more liberal standard

of Rule 15(a) will apply to the district court's denial of leave to amend.' Four
factors are relevant to good cause: '(1) the explanation for the failure to timely
move for leave to amend; (2) the importance of the amendment; (3) potential
prejudice in allowing the amendment; and (4) the availability of a continuance to
cure such prejudice.'

*Id.* (internal citations omitted).

In the instant case, a deadline for amendments to the pleadings was not contained within
the scheduling order issued on June 22, 2022. However, a class discovery deadline was set for
March 3, 2023, as extended. Here, Plaintiff sought leave to amend her Complaint to add parties
and subject them to the class allegations. Given the discovery deadline of March 3, 2023, the
deadline for amending the pleadings certainly passed when the class discovery deadline passed,
within the context of the Court's scheduling order. Consequently, Fed. R. Civ. P. 16(b) and the
authority of *Fahim, supra*, are applicable to the case at hand.[3]

### 1.    Plaintiff Failed to Conduct Any Diligence Whatsoever and She Failed to Timely Seek Leave, Resulting in Significant Undue Delay

While "Rule 15(a) does not impose a time limit for permissive amendment, at some point,
time delay on the part of a plaintiff can be procedurally fatal." *Smith v. EMC Corp*., 393 F.3d 590,
595 (5th Cir. 2004) (internal quotations omitted). "In such a situation, the plaintiff [is the one who]
bears the burden of showing the delay" and must show that it is "due to oversight, inadvertence,
or excusable neglect." *Id.*

In *Parish v. Frazier*, the Fifth Circuit found that, where a "seven month delay between the
filing of the original complaint and the motion for leave to amend could have been avoided by due

---

[3] In its opposition to Plaintiff's Motion for Leave, LPG did not specifically cite Rule 16(b) or *Fahim v.
Marriott Hotel Servs*. However, the issues raised within Rule 16(b) and Fahim were asserted and argued by
LPG in its opposition Memorandum. Specifically, the issues of undue delay and Plaintiff's failure to timely
seek leave to amend and the prejudice to LPG were thoroughly addressed and argued by LPG in its
Memorandum, which are factors to consider under Fed. R. Civ. P. 15(a) and 16(b) and their attendant
jurisprudence.

diligence" occurred, the plaintiff was required to show that delay was due to oversight, inadvertence or excusable neglect. *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999).

In *Mayfield*, the movant "offered the district court no explanation" for failing to amend at the outset of the case. *United States ex rel. Lin v. Mayfield*, 773 Fed. App'x. 789, 791 (5th Cir. 2019). The court further found that the movant's "bare assertion of mistake" did not satisfy its burden to show that its delay was due to "oversight, inadvertence, or excusable neglect." *Id. See also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (stating that a "litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." (quoting *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982)).

While LPG may at one time have had the burden to show undue delay under Rule 15(a) standard, Plaintiff should now bear the burden because her time delay is procedurally fatal. Plaintiff first filed this matter March 17, 2022. Discovery on class certification closed March 3, 2023. As admitted by Plaintiff, the new-party defendants and allegations contained in Plaintiff's FAC are based on a state court matter in California that has been pending and in the public record since September 20, 2022. [Doc. 44-1, "California Complaint"].[4] Procedurally, Plaintiff seeks to hold the new defendants liable on a class-wide basis.

Moreover, and what should have been dispositive of Plaintiff's Motion for Leave, the record shows that the primary lead new-party defendant, Daniel March, was known by Plaintiff at the time she filed her original Complaint, in March 2022. March signed the Legal Services Agreement that was attached to Plaintiff's original Complaint. [Doc. 1-2, page 5]. March held himself out to be the "Managing Shareholder" of LPG.

---

[4] The Court can take judicial notice of public records. *See, e.g., Nguyen v. Bank of Am., N.A.*, 728 F. App'x 387, 388 (5th Cir.2018); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

It is inexplicable that Plaintiff waited an entire year to name March as a potential defendant here. After LPG raised this issue in its opposition, Plaintiff offered an illogical rebuttal:

> However, the fact that Daniel March, Jayde Trinh and others were involved in a scheme to divert the proceeds of the credit repair business from LPG – the fact that makes it necessary to add the new defendants – was not obvious at the time the complaint was filed. If anything, March's signing of the contract conceals that fact.

[Doc. 45, Page 2, ¶5].

It is inconceivable for Plaintiff to plead ignorance, given that March held himself out to be the Managing Shareholder. Moreover, Plaintiff's only allegations against March, as being allegedly in violation of the Credit Repair Organizations Act (the "CROA"), are as follows:

> Defendant Marsh [sic] authorized the placement of his name on communications selling the services of LPG to consumers, which services consisted of improving a consumer's credit, credit history, and credit rating, and providing advice and assistance to consumers with respect to improving their credit, credit history and credit rating.
>
> * * *
>
> Defendant Marsh [sic] also personally authorized the placement of his name on communications sent through the mails to creditors for the purpose of improving consumers' credit, credit history and credit rating.

[Doc. 47, ¶¶68-69].

Concerning Plaintiff's Class Allegations, Plaintiff's only assertion pertaining to March – and the other Defendants – is that "[t]he predominant common questions are: * * * [t]he liability of each Defendant other than LPG for [LPG's] practices."  [Doc. 47, ¶108.c.].

These bare bone allegations are a far cry from Plaintiff's argument in her Reply brief that the new-party defendants "were involved in a scheme to divert proceeds."  Instructively, and fatal to Plaintiff's argument in this regard, is that the "diversion of proceeds" is not an actionable cause of action under the CROA. Indeed, Plaintiff does not offer any allegations of the "diversion of proceeds" under her stated claims arising under the CROA.

8

This same analysis applies to attorney Jayde Trinh. Plaintiff alleges that Trinh "was one of the 'attorneys' listed by LPG." [Doc. 47, ¶39]. In Plaintiff's original Complaint, she attached as an exhibit a document containing numerous screenshots from LPG's website, which were viewed and downloaded by Plaintiff on March 8, 2022. [Doc. 1-5]. LPG's website, as shown in Plaintiff's exhibit, contains a link whereby the Internet user can click on "OUR ATTORNEYS." [Doc. 1-5, at page 9]. Plaintiff fails to explain why she did not conduct further diligence, whether before she filed her Complaint or earlier in the litigation, on the LPG attorneys listed on the LPG website at the time she filed her original Complaint. Given the terms of her Legal Services Agreement for the provision of LPG's legal services, it is only natural to assume that Plaintiff would or should have done the proper due diligence with respect to attorneys March and Trinh.

Indeed, in response to LPG's opposition on this point, Plaintiff in her Reply Memorandum urges as follows:

> LPG claims Plaintiff should have been aware of Jayde Trinh's involvement because Plaintiff attached a screenshot of LPG's website to the original complaint, proving that Plaintiff visited LPG's website prior to filing this case, and Jayde Trinh was listed as an employee on the website.
>
> * * *
>
> However, the fact that Daniel March, Jayde Trinh and others were involved in a scheme to divert the proceeds of the credit repair business from LPG – the fact that makes it necessary to add the new defendants – was not obvious at the time the complaint was filed. If anything, March's signing of the contract conceals that fact.

[Doc. 45, Page 2, ¶¶4-5].

Plaintiff attempts to downplay her lack of diligence and investigation here, instead arguing ignorance. Again, Plaintiff's assertion to now be in the possession of knowledge surrounding the "diversion of proceeds" does not support Plaintiff's tardy request for leave to amend. For the same reasons espoused above as to why March is not a proper defendant here, neither is Trinh.

Moreover, in her FAC, Plaintiff does not list a single allegation against Trinh under her stated claims arising out of the CROA.

Turning to Tony Diab, Plaintiff states that she first became aware of Diab's alleged involvement with LPG by way of the California litigation. From Plaintiff's Motion for Leave, the same can be said of all other new-party defendants. Notwithstanding that Plaintiff admittedly had knowledge of March's and Trinh's involvement with LPG at the time this action was commenced, Plaintiff was well aware of all new-party defendants – and particularly their LPG "connections" (including this alleged "scheme to divert the proceeds") at such time as Plaintiff was aware of the California litigation (at latest). [Doc. 42, ¶1]. Specifically, Plaintiff uses this knowledge as her primary reason for seeking leave to amend at this late juncture:

> As a result of litigation in California federal and state courts among participants in the operations of Defendant The Litigation Practice Group, PC ("LPG"), it has become apparent that:
>
> a.    The receivables generated by LPG's credit repair services have been sold to multiple investors, such as Validation Partners, LLC. Validation Partners, LLC also provided funding for LPG, knowing of the nature of its credit repair business. The proposed amended complaint names Validation Partners, LLC and its principals, Russ Squires and Wes Thomas, as Defendants.
>
> b.    Three individuals have directed the activities of LPG: Daniel S. March; disbarred attorney Tony M. Diab; and Jayde Trinh, a purported lawyer who was Diab's assistant and shared an office with him.
>
> c.    Money generated by LPG's credit repair operations has been transferred to Vulcan Consulting Group LLC, of which Diab is the principal owner.
>
> d.    Files and accounts of LPG are being transferred to Oakstone Law Group PC is a California professional corporation with the address of 888 Prospect Street, Ste. 200, La Jolla, CA 92037. Trinh is currently held out as the "head attorney" of Oakstone Law Group PC, although she is not listed on the website of the California state bar.

[Doc. 42, ¶1].

The state court litigation referenced by Plaintiff was filed on September 20, 2022, in the Superior Court for the State of California, County of Orange. [Doc. 44-1, *Validation Partners, LLC v. The Litigation Practice Group, PC, et al.*, Case No. 30-2022-01281911-CU-BC-CXC, Judge Sherman].

Notwithstanding that the state court litigation was filed on September 20, 2022, Plaintiff fails to set forth in her Motion for Leave the reason behind waiting five (5) months, until class discovery was almost complete, and until after moving for class certification, to amend her original Complaint.

In her Motion for Leave, Plaintiff offers no explanation for the delay and lack of due diligence other than vague "revelations" about the additional allegations she proffered in her FAC. Simply put, these "revelations" came to light and hit the public record in September 2022. Plaintiff's failure, until February 2023, to amend her allegations and name additional defendants is a significant factor in deciding whether to grant leave to amend.

When faced with this argument in LPG's opposition brief, Plaintiff attempts to justify her extreme delay and lack of diligence by again pleading ignorance:

> LPG argues that Plaintiff's motion is untimely because Plaintiff had "constructive knowledge" of the additional facts pled in the proposed amended complaint for approximately five months, when litigation against LPG alleging similar facts was first filed in California state courts. However, there is no obligation on the part of Plaintiff to monitor state courts in all 50 states for information which could be relevant to Plaintiff's case. Plaintiff did not acquire actual knowledge of the litigation involving LPG in California federal and state courts until January 2023.

[Doc. 45, ¶3].

This is incorrect, and Plaintiff's argument fails as a matter of law. *See In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1170 (5th Cir. 1979). In *In re Beef Industry Antitrust Litigation*, the Fifth Circuit stated that "[n]umerous federal courts have suggested that plaintiffs are chargeable

with knowledge of the contents of public records." *Id.* (*citing Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975); *Morgan v. Koch*, 419 F.2d 993, 998 (7th Cir. 1969); *Overfield v. Pennroad Corp.*, 146 F.2d 889, 898 (3d Cir. 1944); *Pettibone v. Cook Cty.*, 120 F.2d 850, 855 (8th Cir. 1941)).

While the *Beef Industry* litigation surrounded actual versus constructive knowledge in the context of the statute of limitations, the analysis here is no different. The issue is one of timing, and whether the constructive knowledge (coupled with the absence of actual knowledge) of the existence of public records excuses one's delay in performing a certain act triggered by the contents of the public record. In the eyes of the Fifth Circuit, and in reliance on other federal circuits, constructive knowledge is the same as actual knowledge. Put another way, a person, like Plaintiff here, cannot fail to act in reliance on a perceived ignorance of a set of facts widely available in the public record.

Further, it is instructive to note that the *Beef Industry Antitrust Litigation* was decided in 1979 (and based upon public records from the 1960's), well before the advancement of the Information Age and certainly well before the advent of the Internet. Notwithstanding the absence of electronic records online, the Fifth Circuit stated that plaintiffs are chargeable with knowledge of the contents of public records.

Under these circumstances, it is Plaintiff's burden to show the reason for delay; and she cannot do so. Plaintiff has not and cannot because a bare assertion of a "revelation" concerning new allegations and new parties she now seeks to include were easily discoverable – by Plaintiff herself, in the public domain – more than five months prior to her request for leave to amend.

In support of her feigned ignorance, Plaintiff suggests that she is not "obligated" to monitor state courts in all fifty states. Notwithstanding that the Fifth Circuit holds otherwise, Plaintiff has

always had full knowledge of Plaintiff's location in Orange County, California. One must look no

further than the Legal Services Agreement attached to Plaintiff's Complaint, under the signature

of LPG's Managing Shareholder, Dan March. Certainly, Plaintiff is not suggesting that her legal

counsel does not possess the time or resources to occasionally perform a simple docket search of

the state court located in Orange County, which takes all of ten minutes. Simply put, Plaintiff

performed no diligence whatsoever.

      The Fifth Circuit has commented that a party's "awareness of facts and failure to include

them in the complaint might give rise to the inference that the [party] was engaging in tactical

maneuvers to force the court to consider various theories seriatim." *Dussouy v. Gulf Coast Inv.*

*Corp.*, 660 F.2d 594, 599 (5th Cir. 1981). The Fifth Circuit has denied leave to amend in instances

where facts were known to a party at the outset of a case and were not plead. *See*, *e.g.*, *Mitsubishi*

*Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199, 1203 (5th Cir. 1986) (stating that failure to urge a claim

which is "usually apparent at the outset of a case … strongly suggests either a lack of diligence …

or a lack of sincerity");  *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137 (5th Cir. 1993) (upholding district

court's finding of bad faith and dilatory motive for movants not bringing claims sooner when they

were aware of the underlying facts of such claims at the outset of the litigation).

      In the case at bar, Plaintiff does not offer any reasonable justification for her extreme delay

in seeking leave to amend. Likewise, Plaintiff does not offer any reasonable justification for her

failure to conduct any diligence whatsoever. As admitted by Plaintiff, she had full knowledge and

awareness of March's and Trinh's involvement and connections with LPG at the outset of this

case, nearly a full year prior to seeking leave to amend. Concerning the other new-party defendants,

Plaintiff acquired knowledge of the other defendants' involvement with LPG a full five (5) months

prior to seeking leave to amend. Yet Plaintiff waited until the close of class discovery to request leave to file an amended complaint.

Plaintiff should be held accountable for her undue delay and for her failure to conduct any diligence whatsoever.

**2.    LPG Is Unduly Prejudiced by Plaintiff's Amendments**

"A defendant is prejudiced if an added claim would require the defendant 'to reopen discovery and prepare a defense for a claim different from the [one] . . . that was before the court.'" *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (quoting *Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (5th Cir. 1999)). In *Smith v. EMC Corp.*, the district court found that "[a]llowing Smith to amend his complaint would have caused considerable delay and expense for EMC and the court." *Id.* The Fifth Circuit ultimately found that the non-movant would have been prejudiced. *Id.* at 597.

Notwithstanding LPG's bankruptcy, LPG will be unduly and significantly prejudiced here because it will potentially need to reopen discovery and prepare new, additional defenses based on the new allegations and against the new-party defendants. While the automatic stay precludes Plaintiff from proceeding with litigation against LPG at present, LPG nonetheless vigorously objects to the Magistrate Judge's Text Only Order with an eye towards the future. There is no way to predict whether the automatic stay will remain in place, as one cannot always assume the status quo. For the purposes of its instant Objections, LPG assumes, for the sake of argument, that it will be subject to future litigation should the Magistrate Judge's clearly erroneous decision be left to stand. Moreover, it is likely that LPG would need to indemnify March, Trinh, and/or Diab.

After litigating this case for an entire year, and after LPG's voluminous production of thousands of documents, there is simply no basis to start this case over at the expense of LPG and

14

at the expense of the Court. LPG has already incurred significant attorney fees. To subject LPG to another six-plus months of discovery (at least) is unduly prejudicial and simply does not support Plaintiff's Motion for Leave.

In her request for leave, Plaintiff simply avers that "[t]he amendments will not cause any prejudice to LPG."  Plaintiff does not provide any support for this statement in her Motion.

In rebuttal of LPG's opposition on this point, Plaintiff posits as follows:

> LPG's claim that it would need to reopen discovery and defend against new theories (LPG Resp., p. 9) is false. While class discovery has closed, merits discovery is still open, and LPG has never issued written discovery to Plaintiff. No depositions have taken place. Additionally, the proposed amendments will not substantially alter the scope of discovery, as the proposed amended complaint involves the same transactions as the original complaint, the claim against LPG is exactly the same, and the class allegations are exactly the same.

[Doc. 45, ¶7].

This is patently false and represents a gross mischaracterization of the discovery process. The distinction between class and merits discovery is not easy to draw because class certification issues are often intertwined with the merits. In the instant case, the discovery produced by LPG speaks both to the class certification issues and to the merits. By way of one example, LPG's production of the Beech file speaks heavily to the merits (i.e., what services were performed, and what actions were taken, by LPG on behalf of Beech in the attorney-client relationship).

Permitting an amendment at this late stage would force LPG to reopen class-wide discovery and would be a miscarriage of justice. While the claim against LPG might be the same, LPG's defense is not, and the class allegations are not. Adding new-party defendants, especially employees and/or affiliates of LPG, absolutely changes the game. Plaintiff now seeks to pursue class action claims against three individuals who are employed by, or affiliated with, LPG. The scope of discovery invariably changes, as the parties will need to dive into the details of the LPG

employment relationships and get into the minutiae of who did what, when, and where for or on behalf of LPG. This is unduly and unfairly prejudicial.

In addition, it is disingenuous for Plaintiff to suggest that the amended complaint involves "the same transactions" as the original complaint. The entire stated purpose of Plaintiff's Motion for Leave is to pursue these apparent newfound "revelations" involving the new-party defendants' alleged "diversion of funds."  Plaintiff seemingly is intent on alleging in the FAC a web of monetary transactions involving LPG monies and other related business transactions. These certainly are not the "same transactions" alleged in the original Complaint. Forcing LPG to reopen discovery on these alleged "transactions" is unduly prejudicial.

Plaintiff also suggests that LPG will not suffer prejudice because depositions have not been taken. This point actually works heavily in LPG's favor. The fact that Plaintiff's litigation strategy involved abstaining from depositions supports LPG's position, not Plaintiff's. Granting leave to amend and forcing LPG to reopen discovery would now subject LPG to potentially submitting to four depositions: (i) LPG's corporate representative; (ii) March; (iii) Diab; and (iv) Trinh. This would also force LPG to attend the depositions of the other five new-party defendants.

Plaintiff also suggests that LPG would not be prejudiced because it did not propound written discovery. This, too, misses the mark. LPG's litigation strategy is of no consequence or import. As can be gleaned from Plaintiff's Motion for Class Certification, LPG did not need to propound written discovery to defeat Plaintiff's request for class certification, as the claims were originally alleged. Now, however, if the amended complaint stands, LPG is left no choice but to propound extensive written discovery surrounding a myriad of allegations which have nothing to do whatsoever with the CROA.

LPG would also be left no choice but to propound extensive written discovery surrounding March, Diab, and Trinh, and their relationships or dealings with Plaintiff – or lack thereof.

Consequently, allowing leave to amend would result in extensive additional discovery, notwithstanding that the class discovery period has closed. This will result in significant expense and hardship for LPG and is simply a burden that LPG should not be forced to bear.

Finally, indemnification cannot be overlooked. LPG would likely need to cover the defense of its employees and/or affiliates, thus resulting in significant legal fees and resources that it should not be forced to incur. This also raises an issue involving the automatic stay, and could deprive March, Trinh, and Diab of a defense.

Simply put, nothing about this is in line with any Fifth Circuit jurisprudence. Simply put, the Magistrate Judge's Text Only Order, lacking any reasoning or analysis, is clearly erroneous and is contrary to longstanding Fifth Circuit precedent.

### 3.    LPG's Bankruptcy Prohibits the Amended Complaint

For all of the foregoing reasons, the Magistrate Judge's Text Only Order must be vacated. Notwithstanding, the District Court Judge must take note that the filing of the amended complaint, in and of itself, is a violation of the automatic stay, 11 U.S.C. § 362. The filing of a bankruptcy petition operates as a stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

The filing of an amended complaint listing LPG as a party-defendant is a direct violation of the automatic stay. It makes no difference that the continuation or maintenance of the claims against LPG are stayed after the filing of the amended complaint. The fact of the matter is that the

17

filing of an amended complaint listing LPG as a named defendant in the first instance is a violation of the bankruptcy code.

Accordingly, and in addition to the errors set out above, the Magistrate Judge's Text Only Order is clearly erroneous and contrary to 11 U.S.C. § 362.

## V.    <u>CONCLUSION</u>

LPG respectfully requests that the District Court Judge vacate the Magistrate Judge's Text Only Order and instead find that Plaintiff's Motion for Leave is untimely and unduly prejudicial to LPG. The Magistrate Judge's Text Only Order is clearly erroneous and contrary to law.

Respectfully submitted,

*/s/ Rebecca J. Mansell*
Rebecca J. Mansell, Esq. (MSB 9778)
Rolfes Henry Co., LPA
175 Main Street, Suite B
Biloxi, MS 39530
Telephone: (228) 207-1366
Facsimile: (513) 579-0080
Email: rmansell@rolfeshenry.com
         ctiblier@rolfeshenry.com

*and*

**LUPER NEIDENTHAL & LOGAN, LPA**

*/s/ Matthew T. Anderson*
Matthew T. Anderson (OH B#: 0082730)
Kyle T. Anderson (OH B#: 0097806)
1160 Dublin Road, Suite 400
Columbus, Ohio 43215-1052
(614) 221-7663 Fax: (866) 345-4948
Email: manderson@LNLattorneys.com
Email: kanderson@LNLattorneys.com

*Attorneys for Defendant The Litigation Practice Group PC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been filed via the Court's electronic filing system on this the 4th day of May, 2023. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the Court's electronic filing system.

*/s/ Rebecca J. Mansell*      

Rebecca J. Mansell, Esq. (MSB 9778)

*Attorney for Defendant*
