IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CAROLYN BEECH, *on behalf of*                    PLAINTIFF
*herself and the class members*
*described in complaint*


v.                                        Civil No. 1:22cv57-HSO-BWR


THE LITIGATION PRACTICE GROUP,
PC, et al.                                      DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF CAROLYN
BEECH'S MOTION [91] TO CERTIFY CLASS</u>

BEFORE THE COURT is Plaintiff Carolyn Beech's Motion [91] to Certify

Class with Respect to Defendants other than The Litigation Practice Group, PC,

filed pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). No Defendant

has filed a response to the Motion [91]. Having considered the record and relevant

legal authority, the Court finds that Plaintiff Carolyn Beech's Motion [91] should be

denied.

I.   <u>BACKGROUND</u>

A.   <u>Procedural history</u>

Plaintiff Carolyn Beech ("Plaintiff" or "Beech") originally brought this action

pursuant to the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 et seq.

and "on behalf of 3 classes, pursuant to Fed.R.Civ.P. [sic] 23(a) and 23(b)(3)."

Compl. [1] at 1, 7. The Complaint [1] alleged that Defendant The Litigation Practice

Group, PC ("LPG"), a credit repair organization, violated the CROA, in that LPG

1

solicited Plaintiff for a "debt forgiveness" program, *id.* at 2-8, wherein LPG would negotiate settlements on Plaintiff's delinquent debts amounting to $12,650.44 in return for her paying LPG $296.95 a month for two years, *id.* at 2. The Complaint [1] further alleged that LPG represented to Plaintiff that its program would "repair her credit and improve her credit score." *Id.* Plaintiff discontinued her payments after three months when she was served with summonses and complaints on two of the debts LPG had agreed to negotiate on her behalf. *Id.* at 3.

The Complaint [1] asserted that LPG violated the CROA in three different ways. *Id.* at 3-7. First, LPG violated the CROA's prohibition on charging and receiving payment before services were fully performed because LPG would charge a monthly sum before it negotiated a settlement of Beech's outstanding debts. *Id.* at 4; *see also* 15 U.S.C. § 1679b(b). Second, it failed to make the required written disclosures to consumers, and it was "the standard policy and practice of Defendant LPG to not provide the required disclosures." Compl. [1] at 4-5; *see* 15 U.S.C. § 1679c(a)-(b). Third, LPG failed to include the required cancellation rights in its contract and provide separate notice of consumers' cancellation rights. Compl. [1] at 5-7; 15 U.S.C. §§ 1679d(4), 1679e. The Complaint [1] purported to identify three classes of plaintiffs: "Class A," consisting of those who entered into contracts that provided for payment before services were fully performed; "Class B," including those who were not provided the required written disclosures; and "Class C," consisting of those who entered into contracts without cancellation rights and were not provided separate notice of their cancellation rights. Compl. [1] at 7-8.

On February 10, 2023, Plaintiff filed her first Motion [40] to Certify Class based upon the three designations outlined in the Complaint [1]. Mot. [40] at 1-2. On March 21, 2023, LPG filed Notice [46] that it had sought bankruptcy protection the previous day. Not. [46]; *see also In re The Litigation Practice Group P.C.*, 8:23-bk-10571-SC (Bankr. C.D. Cal. filed Mar. 20, 2023). Pursuant to 11 U.S.C. § 362(a) and LPG's Notice [46], the Court denied Plaintiff's Motion [40] without prejudice and stayed proceedings against LPG. Text Only Order, April 11, 2023.

Plaintiff then filed a Motion [42] for Leave to File Amended Complaint Adding Parties, which the Court granted, "with the understanding that The Litigation Practice Group's bankruptcy petition automatically stayed the continuance of this judicial proceeding as against it." Text Only Order, April 20, 2023; *see also* Mot. [42]. The First Amended Complaint [48] added Defendants Daniel S. March (incorrectly identified as "Marsh" in the First Amended Complaint), Tony M. Diab, Validation Partners, LLC, Russ Squires, Wes Thomas, Vulcan Consulting Group LLC, Jayde Trinh, and Oakstone Law Group PC. 1st Am. Compl. [48] at 1-2. The First Amended Complaint [48] contains the same factual allegations as those in the original Complaint [1], asserts the same three alleged CROA violations and makes the same three class designations, but it adds allegations regarding the new defendants' roles in LPG's asserted CROA violations. *Id.* at 3-12.

Specifically, the First Amended Complaint [48] asserts that Defendant Tony M. Diab ("Diab") is a disbarred attorney who was responsible for operating LPG and

who authorized the alleged CROA violations. *Id.* Defendant Daniel S. March
("March") was the sole officer and director of LPG, but was essentially a figurehead
who permitted Diab to use his name on documents that violated the CROA. *Id.* at 3.

Defendant Validation Partners, LLC ("Validation Partners") allegedly raised
capital for LPG's operations, which it accomplished by purchasing at a discount
accounts receivable owed to LPG by consumers. *Id.* at 4. Plaintiff asserts that
Validation Partners used nearly $66,000,000.00 of investor funds to purchase over
40,000 accounts receivable and then loaned LPG $3,835,045.00. *Id.* Additionally,
Validation Partners purportedly received payments before services were fully
performed and from contracts that did not contain cancellation rights, all in
violation of the CROA. *Id.* at 9, 11. Defendants Russ Squires ("Squires") and Wes
Thomas ("Thomas"), as the executive directors of Validation Partners, knowingly
authorized and directed Validation Partners' actions. *Id.* at 5.

Defendants Vulcan Consulting Group LLC ("Vulcan") and Oakstone Law
Group, PC ("Oakstone") allegedly received funds or benefits derived from LPG's
CROA violations. *Id.* at 6. Lastly, Defendant Jayde Trinh ("Trinh"), who was listed
as an "attorney" for LPG, was an assistant to Diab, and was allegedly held out as
"head attorney" for Oakstone despite not being listed on the website of the
California State Bar. *Id.* at 5.

On September 12, 2023, Plaintiff filed a second Motion [86] to Certify Class
seeking certification of the same three classes as those stated in both Complaints
[1], [48]. Mot. [86] at 1-2; *see also* Fed. R. Civ. P. 23(a), 23(b)(3). The Court denied

that Motion [86] without prejudice on grounds that Plaintiff had not shown "how each class satisfies Rule 23(a)'s numerosity requirement[,]" Order [90] at 8, or "that 'each subclass independently satisfie[d]' Rule 23's other requirements[,]" *id.* at 9 (quoting *Elson v. Black*, 56 F.4th 1002, 1007 (5th Cir. 2023)).

B.    The present Motion [91] to Certify Class

Plaintiff has now filed her third Motion [91] to Certify Class. *See* Mot. [91]. She argues that a class action is appropriate because LPG had 67,000 clients, the case deals with the legality of standardized documents and standard practices, each class member was subject to these practices, Plaintiff nor her counsel have any interests which conflict with the proposed class, and most class members are likely unaware of their rights and cannot afford to bring individual actions on their own. *See* Mem. [92] at 13-16. She seeks certification of a single class defined as

> all persons who, on or after March 17, 2017 (five years prior to the filing of this action), entered into contracts with The Litigation Practice Group, PC ("LPG"), which contracts were not canceled within three business days. Residents of Georgia are excluded from the class (a separate class action was filed for Georgia residents by other counsel).

Mot. [91] at 1. Specifically, Plaintiff seeks to certify a class of LPG's clients, excluding those in Georgia, who signed a legal services agreement. Mem. [92] at 4; *see, e.g.*, Ex. [91-11] (Legal Services Agreement between Beech and LPG). Plaintiff asserts that there are 67,001 members of this class, Mem. [92] at 4, and that the appropriate measure of damages is the amount of money each class member paid to LPG, *id.* at 16. No Defendant has responded to Plaintiff's Motion [91], and the time

for doing so has passed. Plaintiff filed a Reply [93] on February 14, 2024, reiterating her request that the Court grant class certification. *See* Reply [93].

## II.   DISCUSSION

### A.   Relevant legal authority

#### 1.   The Credit Repair Organizations Act

Congress enacted the CROA in order "to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services" and "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679. The CROA prohibits credit repair organizations from engaging in a multitude of practices, such as: misleading any person who has extended credit to a consumer on the consumer's credit worthiness, making false representations of the services offered by the credit repair organization, engaging in fraud, receiving any money for the performance of credit repair services before such service is fully performed, entering into a contract with a consumer without providing separate written disclosures, and entering into contracts that do not contain a notice of the consumer's cancellation rights. 15 U.S.C. §§ 1679b, 1679c, 1679d. Litigants who successfully prove CROA violations are entitled to "[t]he greater of–(A) the amount of any actual damage sustained by such person as a result of such failure; or (B) any amount paid by the person to the credit repair organization[,]" punitive damages, and attorneys' fees. 15 U.S.C. § 1679g(a).

2.   <u>Federal Rule of Civil Procedure 23</u>

Under Federal Rule of Civil Procedure 23(a), four requirements must be satisfied before a class is certified:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 623 (5th Cir. 1999); *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005). The class must also satisfy one of Rule 23(b)'s requirements. Fed. R. Civ. P. 23(b). Here, Plaintiff travels under the third requirement, Mem. [87] at 17-18, asserting "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy[,]" Fed. R. Civ. P. 23(b)(3).

"[I]t is the party seeking certification who bears the burden of establishing that the requirements of Rule 23 have been met." *Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 554-55 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)). "The parties' presentation of an uncontested motion for class certification does not relieve the court of the duty of determining whether certification is appropriate." 3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 7:3 (6th ed. 2023); *see also Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002) ("Even if [the defendant] had stipulated to

certification, the court was bound to conduct its own thorough rule 23(a) inquiry."); *Izzio v. Cent. Golf Partners Mgt., L.P.*, 670 F. App'x 348, 349-50 (5th Cir. 2016) (per curiam) ("It is not enough that both sides may have stipulated to certification, because 'the court is bound to conduct its *own* thorough rule 23(a) inquiry.'" (emphasis in original) (quoting *Stirman*, 280 F.3d at 563 n.7)); *Crowley v. Paint & Body Experts of Slidell, Inc.*, No. CIV.A. 14-172, 2014 WL 2506519, at *4 (E.D. La. June 3, 2014) ("Even where a motion for conditional certification is unopposed, courts still evaluate whether plaintiffs have met the required standard." (citations omitted)); *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *5 (W.D. Tex. Aug. 20, 2018) ("Even though certification is uncontested, the Court must conduct its own inquiry to determine whether the requirements of Rule 23(a) and Rule 23(b)(3) have been satisfied." (citations omitted)).

"It is well-established that '[a] district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)).

B.   Plaintiff has not satisfied all of the requirements of Rule 23

1.   Commonality and predominance (Rules 23(a)(2) and (b)(3))

Showing commonality typically "is not demanding[,]" *Mullen*, 186 F.3d at 625, and "requires the plaintiff to demonstrate that the class members 'have suffered the same injury[,]'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "This does

not mean merely that they have all suffered a violation of the same provision of law" but instead the "claims must depend upon a common contention[.]" *Id.* at 350.

But class certifications sought pursuant to Rule 23(b)(3) require the plaintiff to show that "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). The predominance requirement is "'far more demanding' than Rule 23(a)(2)'s commonality requirement." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). "Assessing predominance 'calls upon courts to give careful scrutiny to the relation between common and individual questions in a case.'" *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253 (5th Cir. 2020) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). In Rule 23(b)(3) cases, "courts will often consider commonality simultaneously with predominance," but "the bulk of the court's analysis will be devoted to the more stringent requirement of predominance." 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:18 (6th ed. 2023).

Here, the Amended Complaint [48] raises three alleged violations of the CROA: (1) that it was LPG's standard policy and practice to charge payment before services were fully performed; (2) that LPG's standard form contracts did not include the required written disclosures; and (3) that LPG failed to provide adequate cancellation rights in its standard form contract or as a separate

document.[1] 1st Am. Compl. [48] at 8-13. According to Plaintiff, resolution of these claims establishes that three common questions exist: "[w]hether Defendant LPG engages in the practices described; [w]hether such practices violates [sic]" CROA; and "[t]he liability of each Defendant other than LPG for such practices." *Id.* at 14.

Plaintiff has not met her burden of showing that a standard form contract exists. She states that commonality and predominance are satisfied because "this case turns on the legality of standard form documents and standard practices." Mem. [92] at 15. But it appears that Plaintiff merely presumes this is so and does not offer any evidence to support her assertion.[2] Such presumptions are improper when resolving motions to certify class. *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020) ("[C]ourts must certify class actions based on proof, not presumptions."). Indeed, testimony put on the record by Plaintiff indicates the opposite is true. *See* Ex. [91-3] at 47 (transcript of creditors meeting in LPG's bankruptcy at which Defendants March and Diab testified). In this meeting, Diab testified that in the legal services agreements,

> the terminology would vary based on the state, but it was a legal services agreement that the client would execute with LPG. It was a flat fee representation. In exchange for the flat fee, LPG agreed to provide the

---

[1] Despite the broad claims in the Amended Complaint [48], Plaintiff's proposed class is limited to those who entered into a contract with LPG within five years of filing and did not cancel their contract within three business days. The CROA allows for any consumer to cancel his or her contract with a credit repair organization within three business days. *See* 15 U.S.C. § 1679e. However, one of Plaintiff's claims is that no cancellation rights were included in the contracts, *see* 1st Am. Compl. [48] at 10-11, and the Legal Services Agreement [48-1] signed by Plaintiff–which she alleges is a standard form contract–includes no cancellation provision, *see* Ex. [48-1]. Thus, there is some inconsistency between the broad claims Plaintiff brings and the limitations she has proposed in the class.

[2] The only evidence Plaintiff offers in support of her assertion that this is a standard form contract is a link to LPG's online home page. *See* Mem. [92] at 4. However, no form document appears on this home page, and because it is Plaintiff's burden to prove that this case involves a form contract, the Court need not search this website for the proof Plaintiff sought to present.

services I referenced before on any one of those three, depending on the client's needs, and the client's payment would be broken up anywhere from one payment to as many as 72 payments, depending on the client's budget. So, some clients would make one payment. Some would make semimonthly payments for two years. Some would pay for 20 months. It varied depending on the client's budget, but it was always a written agreement between the client and LPG for those services that were referenced before.

*Id.* Thus, Plaintiff is not proposing a class based on one standard form contract or practice, but on potentially many individualized contracts based on the circumstances surrounding each class member's engagement with LPG. *See id.* The question becomes not whether a standard form contract violated the CROA as Plaintiff contends, but whether each contract between LPG and a class member violated the CROA as to that individual. The resolution of such a question would require an individualized examination of the terminology of each contract, and whether and how each class member made payments to LPG. In sum, the Court finds that Plaintiff has not carried her burden of showing predominance.[3]

2.    Adequacy and typicality (Rule 23(a)(3) and (a)(4))

A court considers three factors when assessing the adequacy of the named plaintiffs:

(1) "the zeal and competence of the representative[s'] counsel"; (2) "the willingness [sic] and ability of the representative[s] to take an active

---

[3] It is noteworthy that LPG filed a motion with the United State Judicial Panel on Multidistrict Litigation seeking consolidation of outstanding litigation filed against it in the Southern District of Ohio, but the Panel denied LPG's motion on grounds that plaintiffs "assert claims under six different states' credit services, debt relief, or other consumer protection statutes, whose terms and requirements vary." *In re Litig. Prac. Grp., PC, Credit Repair Organizations Act Cont. Litig.*, 658 F. Supp. 3d 1379, 1379 (U.S. Jud. Pan. Mult. Lit. 2023). The Panel further found that a review of other litigation showed that while the resolution of most claims would revolve around whether LPG is a credit repair organization under the CROA, other claims "will involve distinct questions of fact regarding the plaintiffs' individual financial circumstances, the representations made by LPG to each plaintiff, and whether and how LPG failed to provide the promised services." *Id.*

role in and control the litigation and to protect the interests of absentees"; and (3) the risk of "conflicts of interest between the named plaintiffs and the class they seek to represent."

*Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (alteration in original) (quoting *Feder*, 429 F.3d at 130).

Regarding the first factor, Plaintiff has sufficiently shown that her counsel would zealously and competently represent the class members' interests. She has presented evidence of her attorneys' experience and ability to represent the class in this case. *See* Edelman Decl. [91-19]; Graeber Decl. [91-20]. Notably, Plaintiff's counsel was found competent in another class action within this District, *see Kemp v. Tower Loan of Mississippi, LLC*, No. 3:15CV499-CWR-LRA, 2017 WL 3426240, at *3 (S.D. Miss. Aug. 8, 2017), and the record reflects that Plaintiff's counsel has actively pursued this case.

However, Plaintiff has not met her burden as to her own adequacy as a class representative. The Fifth Circuit has "identified a 'generic standard' for the adequacy requirement, noting that 'the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of "controlling" or "prosecuting" the litigation.'" *Feder*, 429 F.3d at 129 (alteration in original) (quoting *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482-83 (5th Cir. 2001)). In other words, a plaintiff must prove the "willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger*, 279 F.3d at 483 (quotations omitted).[4]  In adopting this

---

[4] Some courts have held that this standard does not apply beyond the securities fraud context. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040,

standard, the Fifth Circuit rejected a legal standard which presumed "[t]he adequacy of the putative representatives and of plaintiffs' counsel . . . in the absence of specific proof to the contrary." *Id.* at 481 (alteration in original); *see also Flecha*, 946 F.3d at 768 (quoting *Berger* in support of finding that "courts must certify class actions based on proof, not presumptions" in reversing the grant of class certification of claims brought under the Fair Debt Collection Practices Act).

Here, Plaintiff asserts that she "understands the obligations of a class representative, and has retained experienced counsel, as is indicated in Attachments 19-20, which sets forth counsel's qualifications." Mem. [95] at 16. While Plaintiff need not be a "legal scholar[] and [is] entitled to rely on counsel," *Berger*, 279 F.3d at 483, she must put forth some evidence showing she is an adequate class representative, *Prantil v. Arkema Inc.*, 986 F.3d 570, 575 (5th Cir. 2021) ("[T]he class 'certification inquiry . . . must be made based on adequate admissible evidence to justify class certification.'" (quoting *Unger v. Amedisys Inc.*, 401 F.3d 316, 319 (5th Cir. 2005)). The two declarations attached to Plaintiff's Motion [91] detail her counsel's qualifications, but Plaintiff has not put forward any evidence detailing her own adequacy. *See, e.g.*, *Pedersen v. Kinder Morgan Inc.*, 345 F.R.D. 302, 315 (S.D. Tex. 2024) (citing, among other evidence, plaintiff's deposition

---

1056-57 (S.D. Tex. 2012) (holding that *Berger* and *Feder* do not apply to consumer-class actions). However, the Fifth Circuit has since quoted this standard in non-securities fraud contexts. *See Ward v. Hellerstedt*, 753 F. App'x 236, 247 (5th Cir. 2018) (per curiam) (quoting *Berger* in the context of Fourteenth Amendment challenges to plaintiffs' detention in county jails); *Slade*, 856 F.3d at 412 (quoting *Feder*'s citation of *Berger* in the context of "the certification of [a] contract and Louisiana-insurance law class"); *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016) (quoting *Berger* in the context of claims for breach of contract, fraudulent concealment, negligent misrepresentation, fraudulent inducement, and violations of the Texas Deceptive Trade Practices Act).

testimony to hold that plaintiff met the adequacy burden); *Cole v. Livingston*, No. 4:14-CV-1698, 2016 WL 3258345, at *9 (S.D. Tex. June 14, 2016), *aff'd sub nom. Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) (citing plaintiffs' depositions to show "[p]laintiffs' demonstrated willingness and ability to represent the class"); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 916-17 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (finding class representatives adequate based on their participation in settlement negotiations and declarations filed with the court). Due to the absence of any affidavit or deposition testimony, or other evidence, in the record tending to demonstrate Plaintiff's adequacy, the Court cannot find that she has carried her burden of showing she will adequately represent the interests of the proposed class.

In addition, Plaintiff's attempt to pursue a lower damages amount and potentially waive state-law claims presents a risk that a potential conflict of interest could exist or later arise between her and other class members. *See In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 368 (E.D. La. 1997) ("Courts have recognized that in these circumstances, by attempting to tailor their action in such a way as to improve their ability to establish commonality, class representatives may in fact create an adequacy problem." (citing *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606 (S.D.N.Y. 1982))).

Plaintiff claims that damages can be calculated by taking the amount each class member paid to LPG. Mem. [95] at 17; *see also* 15 U.S.C. § 1679g(a)(1).

However, the statute does not afford Plaintiff leave to select damages, instead it sets damages as "[t]he greater of–(A) the amount of any actual damage sustained by such person as a result of such failure; or (B) any amount paid by the person to the credit repair organization." 15 U.S.C. § 1679g(a)(1). The statute does not contemplate that damages are "either" of two selective options but instead states that damages are "[t]he greater of" the two options. *See id.* Plaintiff incorrectly treats 15 U.S.C. § 1679g(a)(1) as giving her discretion to select the damages calculation on behalf of all class members, and her proposed election of the lower damages calculation raises a concern that Plaintiff is more focused on certifying a class than attempting to maximize the recovery of class members and protect their interests.

To ascertain damages under 15 U.S.C. § 1679g(a)(1), an individual determination of "actual damages" for each class member would be required. In the context of another consumer protection statute, the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., the Supreme Court defined the phrase "actual damages" to include nonpecuniary harm such as emotional distress, *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 292 (2012), and it appears this measure of damages may be available under the CROA, *see, e.g., Arriola v. Pardo*, No. 1:14CV0745 JFA, 2015 WL 3404725, at *8 (E.D. Va. May 26, 2015) (awarding damages for emotional distress on plaintiff's CROA claim). In fact, unlike Plaintiff, other potential class members have brought claims against LPG seeking damages for emotional

distress.[5] Here it seems likely that Plaintiff may not have included claims for emotional distress in her proposed class because determination of the emotional distress suffered by each class member would defeat predominance.[6] Such a decision to favor class certification over pursuing all damages available to the class shows Plaintiff's interests may not be aligned with her fellow class members, meaning a conflict of interest potentially exists.[7] *See In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. at 368.

Plaintiff's Amended Complaint [48] also opted not to bring any potential state-law claims and raises only federal claims under the CROA.[8] "When the class

---

[5] *See* Complaint at 9-10, 12 *Scarlett v. The Litig. Prac. Grp., PC*, 3:22-cv-342-WHR-CHG (S.D. Ohio filed Nov. 18, 2022); Complaint at 9-10, 12, *Sheffield v. The Litig. Prac. Grp., PC*, 3:22-cv-2093-JZ (N.D. Ohio filed Nov. 18, 2022); Complaint at 9-10, 12, *Klaus v. The Litig. Prac. Grp., PC*, 3:22-cv-2094-JGC (N.D. Ohio filed Nov. 18, 2022); Complaint at 5, *Rizo v. The Litig. Prac. Grp., PC*, 2:22-cv-1959-DAD-DB (E.D. Cal. filed Oct. 31, 2022); Complaint at 4-5, *Graham v. The Litig. Prac. Grp., PC*, 2:22-cv-7915-SVW-PLA (C.D. Cal. filed Oct. 31, 2022); Complaint at 4, *Topp v. The Litig. Prac. Grp., PC*, 6:22-cv-814-ADA-JCM (W.D. Tex. filed July 26, 2022).

[6] The Fifth Circuit "recognizes that individual damages issues can preclude class certification." *Jones*, 836 F.3d at 530. Such individual damages issues can arise where they cannot be "determined by reference to a mathematical or formulaic calculation[.]" *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (affirming the denial of class certification and holding that damages for emotional distress and other intangible injuries rely on differences in each class member's facts); *see also Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 378 (5th Cir. 2016) (holding a formulaic approach is not possible in part because plaintiffs sought "damages for emotional distress, which would presumably require testimony from each affected class member").

[7] To the extent that bifurcation would serve as a remedy to address this issue, Plaintiff has not requested such in her class proposal and the Court "is under no obligation to *sua sponte* consider other variations not proposed by any party." *Steering Comm.*, 461 F.3d at 603-04 (holding that a court need not consider how bifurcation would remedy plaintiff's roadblocks in seeking class certification when plaintiff  never proposed such an option). Furthermore, the Fifth Circuit "has made clear that '[a] district court cannot manufacture predominance through the nimble use of management tools.'" *Jones*, 836 F.3d at 531 (alteration in original) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996)). "Nor does any authority require the district court to use case management tools within its discretion." *Id.*

[8] *See, e.g.*, Cal. Civ. Code. §1789.13 (prohibiting a "credit services organization and its salespersons, agents, representatives, and independent contractors" from undertaking certain business practices, including charging or receiving money prior to complete performance); Ohio Rev. Code Ann. § 4712.02 (prohibiting same); 73 Pa. Stat. and Cons. Stat. § 2183 (prohibiting same); Tex. Fin. Code Ann. § 393.202 (requiring that any contract between a credit repair organization and a customer include a conspicuous notice of cancellation rights); Colo. Rev. Stat. Ann. § 5-19-105 (requiring credit repair organizations to provide written disclosures to customers).

representative proposes waiving some of the class's claims, the decision risks creating an irreconcilable conflict of interest with the class." *Slade*, 856 F.3d at 412. In a Rule 23(b)(3) class action, "the risk to unnamed class members is smaller than usual here because of the opportunity for opt outs[,]" *see id.* at 413-45, which means when considering adequacy alone, this issue is less problematic. However, when considering adequacy alongside typicality Plaintiff's failure to raise these state-law claims, which may offer additional but differing remedies to class members, creates another roadblock to class certification. *See Stirman*, 280 F.3d at 563 n.7 ("The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." (quotations omitted)). Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Id.* at 362 (quotations and citations omitted). "[T]he test is whether [the class representative's] claims are typical, not whether she is." *Id.* at 562.

Here, an examination of concurrent litigation against LPG illustrates the typical claims of a class member.[9]  In these cases, most other plaintiffs who are proposed class members bring CROA claims, but, unlike Plaintiff here, they also advance state-law claims and claims which involve differing theories of liability and

---

[9] *See, e.g.*, *Scarlett*, 3:22-cv-342-WHR-CHG; *Sheffield*, 3:22-cv-2093-JZ; *Klaus*, 3:22-cv-2094-JGC; *Rizo*, 2:22-cv-1959-DAD-DB; *Graham*, 2:22-cv-7915-SVW-PLA; *Topp*, 6:22-cv-814-ADA-JCM; *Williamson v. The Litig. Prac. Grp., PC*, 5:22-ap-7015 (Bankr. D. Kan. June 28, 2023) (order dismissing adversary proceeding); *Price v. The Litig. Prac. Grp., P.C.*, 3:22-cv-707-MEM (M.D. Penn. filed May 13, 2022); *Eaton v. The Litigation Practice Group, PC*, 1:22-cv-917-VMC (N.D. Ga. filed March 4, 2022).

remedies based on the individual circumstances surrounding each class member's contract with LPG. *See, e.g.*, Complaint at 11, *Rizo v. The Litig. Prac. Grp., PC*, 2:22-cv-1959-DAD-DB (E.D. Cal. filed Oct. 31, 2022) (raising state-law claims which include showing defendant made misleading representations to plaintiff as to "the nature and efficacy of its services"); Complaint at 8-11, *Topp v. The Litig. Prac. Grp., PC*, 6:22-cv-814-ADA-JCM (W.D. Tex. filed July 26, 2022) (asserting claims based on Texas state-law that require a showing that defendant made false or misleading representations to plaintiff and that defendant mismanaged plaintiff's funds); Complaint at 12, *Price v. The Litig. Prac. Grp., P.C.*, 3:22-cv-707-MEM (M.D. Penn. filed May 13, 2022) (bringing claims for breach of contract and breach of fiduciary duty against many of the non-LPG Defendants named in this suit).[10] As such, Plaintiff has not shown that the claims and legal theories in the Amended Complaint [48] are typical of the entire proposed class, and the Court has "reason to suspect that [Plaintiff] will not be an adequate representative" because she has not demonstrated an incentive "to fully litigate those claims not applicable to her." *Stirman*, 280 F.3d at 563 n.7.[11]

　　In support of typicality, Plaintiff merely states that "typicality is inherent in the class definition. Each of the class members has been subjected to the same practices and signed the same standard form documents as Plaintiff." Mem. [92] at

---

[10] Furthermore, to determine damages under theories such as fraud or misleading representations, individual determinations are likely required as to the extent each plaintiff relied on any such misleading representation. *See Castano*, 84 F.3d at 745 ("[A] fraud class action cannot be certified when individual reliance will be an issue.").

[11] Notably, *Stirman* involved the certification of a Rule 23(b)(3) class where opt-outs were available. *Stirman*, 280 F.3d at 559.

15. But as the Court has already discussed, this is not necessarily so, and nothing can be presumed in certifying a class. *Flecha*, 946 F.3d at 768. This case does not involve identical form contracts, Ex. [91-3] at 47, and LPG's contracts with class members in fact varied depending on the class member's circumstances, *id.* Each class member may also have additional theories of liability available to them based on the state law at his or her disposal. As such, raising only CROA claims is not typical of the members of the proposed class, and resolution of those CROA claims will require individualized findings. Plaintiff has offered no evidence to mitigate the Court's concerns as to the typicality of her claims or to address the reasoning for not including any state-law claims. In short, the Court finds there is insufficient record evidence to establish that Plaintiff is an adequate class representative, or that her claims are typical of the class.

3.   Superiority (Rule 23(b)(3))

Plaintiff's class proposal also does not establish that a nationwide class is the superior method for resolving the class members' claims.

> The superiority analysis is fact-specific and varies depending on the circumstances of each case. Among the factors for the court to consider are "(A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties encountered in managing a class action."

*Ibe v. Jones*, 836 F.3d 516, 516 (5th Cir. 2016) (internal citations omitted) (quoting *Amchem Prods., Inc.*, 521 U.S. at 615-16); *see also* Fed. R. Civ. P. 23(b)(3).

Due to the nature of the damages proposed and the language of 15 U.S.C. § 1679g(a)(1), there are concerns as to the manageability of this case as a class action, and Plaintiff has not demonstrated that a class action is a superior method when the damages formula she proposes would require the Court to ignore part of the statute. *See, e.g.*, *King v. Cap. One Bank (USA), N.A.*, No. 3:11-CV-00068, 2012 WL 5570624, at *14 (W.D. Va. Nov. 15, 2012). *King* addressed the same damages proposal in a CROA case, and concluded that "[p]laintiff's proposal would render the 'greater of' language ineffective: under [p]laintiff's formula, an individual who could prove actual damages greater than the amount of fees paid to [the credit repair organization] would not receive the compensation to which he or she is entitled under the statute." *Id.* "[C]ourts must give effect to the clear meaning of statutes as written. . . . giving each word its ordinary, contemporary, common meaning." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (quotations omitted). This Court cannot interpret the statute as discretionary and ignore its language in order to certify a class based on the damages calculation Plaintiff has proposed. In other words, the Court cannot follow Plaintiff's damages proposal without disregarding the plain language of the statute. And, as the Court highlighted in discussing predominance, the individualized findings required as to each class member's contract and damages would also be unmanageable.

Turning to the individual interests of class members to control separate actions and the extent of litigation already begun, the existence of other litigation around the country raising different claims indicates a general individual interest

in controlling the litigation. This further weighs against class certification. 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:70 (6th ed. 2023) ("[O]ther pending litigation is evidence that individuals have an interest in controlling their own litigation." (emphasis in original removed)). To the extent Plaintiff argues that a class action is superior because class members cannot afford to bring individual cases, such concern is mitigated here because the CROA authorizes an award of attorneys' fees in any successful action. *See* 15 U.S.C. § 1679g(a)(3); *Castano*, 84 F.3d at 748 (holding that the expense of litigation does not make a class action superior because the "prevailing party may recover attorneys' fees under many consumer protection statutes"); *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 118 (5th Cir. 1975) (stating that the ability to recover attorneys' fees is one of the "oft-used bases for showing non-superiority").

In sum, Plaintiff has not carried her burden as to superiority, adequacy, typicality, or predominance. Her Motion [91] to Certify Class should be denied.

III.   <u>CONCLUSION</u>

To the extent the Court has not addressed any of Plaintiff's remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED t**hat, Plaintiff Carolyn Beech's Motion [91] for Class Certification with Respect to Defendants Other than The Litigation Practice Group, PC, is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 11th day of June, 2024.

<u>*s/ Halil Suleyman Ozerden*</u>
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE